[File No. 6142.]

FIRST NATIONAL BANK OF CARSON, NORTH DAKOTA, a
    Corporation, Appellant, v. JOSEPH P. HESS and W. A. Hart,
    Respondents.

(250 N. W. 532.)

Opinion filed August 10, 1933. On rehearing October 25, 1933.

*Jacobsen* and *Murray,* for appellant.
*Sullivan, Hanley* and *Sullivan,* for respondents.

BURKE, J.    This is an action upon a promissory note.    The defendant answered admitting liability on the note and alleging that an action was pending in the district court of Grant county, in which one W. A. Hart was plaintiff and one Peter Botten defendant.    In said action the defendant in the instant case, Joseph P. Hess, was garnisheed.

Thereafter, such proceedings were had that the amount due on said note was deposited in court and W. A. Hart was interpleaded as a defendant and the only question involved in the case, as between the plaintiff and Joseph P. Hess, is the ownership of the note.    Findings of fact and conclusions of law favorable to the defendant, W. A. Hart, on his claim for a proportionate share of the money deposited, were made and from a judgment entered thereon, allowing the defendant his proportionate share of the money deposited and from an order denying plaintiff's motion for judgment, or for a new trial, the plaintiff appeals.

The note is dated October 27th, 1930.    On the 10th day of December, 1930, the Northwest Bancorporation entered into a contract with the First National Bank of Carson, by the terms of which the First National Bank of Carson was to be reorganized, each shareholder in the bank represented and warranted that he owned, free of liens or claims, the shares of stock set opposite his name and expressly represented and warranted that the attached statement was a true and correct statement of the notes of the bank at said date showing the total assets in the amount of at least thirty thousand dollars, representing capital, surplus, dividends, profits and reserves not used as capital. Each shareholder agreed that he would exchange the shares of stock in the bank, set opposite his name, for stock in the company on the basis of one share of bank stock for 2.8 shares of stock in the company.    The agreement was signed by the Northwest Bancorporation and the stockholders of the plaintiff as follows:

| Name of Shareholders | No. of Shares | No. Shares Exchanged for Stock. |
|---|---|---|
| W. A. Hart | 120 | 120 |
| L. Rubin | 40 | 40 |
| R. H. Leavitt | 35 | 35 |
| O. Tollefson | 10 | 10 |
| Peter Bollen | 45 | 45 |

On the 7th day of January, 1931, the Northwest Bancorporation and the stockholders of plaintiff bank entered into another agreement. The material part as affects this action is as follows: "Whereas heretofore, to wit, under date of the 10th day of December, 1930, the parties hereto entered into an agreement wherein and whereby the Stockholders agreed to exchange shares of stock in the Bank owned by them, for shares of stock of the Company upon the basis set out in said contract; and

"Whereas since making said original contract, the Company has caused the assets of the Bank to be examined and such examination has disclosed that certain of the assets of the Bank are unsatisfactory to the Company and the Company has required that such unsatisfactory assets be removed from the Bank; and

"Whereas the Shareholders have requested that the terms of said contract be amended, as herein provided, and that the Company proceed to consummate the acquisition of said stock upon the basis hereinafter set out."

In consideration of the premises and the mutual promises of the parties hereto it was agreed as follows, that the amount of the capital stock should be reduced from thirty thousand to twenty thousand. The number of shares in the new company, that the stockholders are to receive in exchange for stock, was reduced from 2.8 shares to 1.8 for each share of bank stock.

"The Company agrees that all net assets of the Bank, in excess of Twenty Thousand Dollars ($20,000.00), as hereinbefore provided for, may be charged off by the Bank and distributed pro rata to all the present Shareholders of the Bank in proportion to the amount of stock held by each, provided, however, that such additional net assets shall remain in the Bank until such time, not later than December 1st, 1932, as the Company may determine upon, but shall be carried in a separate account in which account all income accruing on such assets from and after the date hereof shall be credited. The Shareholders further agree that the specific assets which are to be charged off, as aforesaid, and held for the benefit of the Shareholders are those which are described in Exhibit "A" hereto attached and made a part hereof." Exhibit "A" is a list of the notes which were required to be charged off, amounting to $20,377.09 and which include the Joe P. Hess note for $1,500.00

and the Hart note for $1,396.06. Just preceding and in line with the names of the makers of these notes (the Hess and Hart notes) are asterisks referring to a notation at the bottom of the list which reads as follows: "These notes to be charged out but to be released to the shareholders and not held as collateral to the guaranty." This list of notes, Exhibit "A," represents the notes which are to be charged off, and following Exhibit "A" is Exhibit "B," being conditional assets referred to in article 5 of the agreement and being the assets collateralled by assets scheduled in Exhibit "A." Paragraph 5 of the contract reads as follows:

"The Shareholders do hereby pledge with the Company Two Hundred (200) of the shares of stock of Northwest Bancorporation which they receive under the terms of this agreement and all their right, title and interest in and to any of the assets of the Bank described in Exhibit "A" (except the note of J. P. Hess in the amount of Fifteen Hundred Dollars ($1,500.00) and the note of E. M. (W. A.) Hart in the amount of Thirteen Hundred Ninety-six and 6/100 Dollars ($1,396.06), and all of the income therefrom which will accrue to the Shareholders in accordance with the terms of subdivision 3 of this contract, as collateral security to assure the Company that on or before December 1st, 1932, all of those certain assets described in Exhibit "B" attached to and made a part of this contract will be paid in full, liquidated or purchased from the Bank at the full amount at which the same are carried on the books of the Bank with all accrued interest thereon or will be put in good standing satisfactory to the Company."

Paragraph 6 of the contract provides that "The Shareholders agree that they will raise the sum of Ten Thousand Dollars ($10,000.00) by voluntary assessment or contribution from all of the shareholders of the Bank, which sum of Ten Thousand Dollars ($10,000.00) shall be added to and become a part of the assets of the Bank and included in making up the total of Twenty Thousand Dollars ($20,000.00) net assets, as hereinbefore provided for, and each of the Shareholders does hereby waive any and all claims against the Bank of any kind whatever on account of such assessment or contribution."

It is clear from this contract that the note in suit was withdrawn from the assets of the bank at the time of the making of this contract and became the property of the stockholders. It was one of the notes

charged off and two lists of notes were made at the time. The first showing the notes that were charged off and this list is intended to show, as it states, "notes to be charged out according to article 3," and they took the precaution of stating at the bottom of the list in a notation, referring to the Hess and Hart notes, viz.: "These notes to be charged out but to be released to the shareholders and not held as collateral to the guaranty."

The contract provides for another exhibit, namely Exhibit "B," "being conditional assets referred to in article 5 of the agreement," which amount is $36,877.17, and all the notes described in Exhibit "A," except the Hess note and the Hart note, are to be held as collateral security for the payment of the notes described in Exhibit "B."

The stockholders have complied with the contract by delivering the collateral agreed on and contributing the ten thousand dollars in cash. The note in suit belongs to the stockholders and does not belong to the bank.

The defendant Hart, as a stockholder, is entitled to his proportionate share of the proceeds of the note on deposit, which the trial court found to be twelve twenty-fifths of such proceeds, or $753.44.

The judgment is affirmed with costs.

NUESSLE, Ch. J., and BIRDZELL, CHRISTIANSON and BURR, JJ., concur.